Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9290 | **DATE** | 1/5/2005 |
| **CASE TITLE** | Shanda Gammage vs. Federal Reserve Bank of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted. Status hearing set for 1/18/05 at 9:00 A.M. is stricken. Any other pending dates are stricken.

*/s/ Amy J. St. Eve*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 0 6 2005 | 29 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | JM | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | 2005 JAN -5 PM 1:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANDA GAMMAGE, )
)
Plaintiff, )
) Case No. 03 C 9290
v. )
)
FEDERAL RESERVE BANK )
OF CHICAGO, )
)
Defendant. )

DOCKETED
JAN 0 6 2005

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Judge:

Plaintiff Shanda Gammage filed a three-count Complaint against her former employer Defendant Federal Reserve Bank of Chicago ("Reserve Bank") alleging employment discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq.* Before the Court is the Reserve Bank's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants the Reserve Bank's motion.

## I. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

Federal Rule of Civil Procedure 56(e) requires that a party responding to a summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial." The Court affords no weight to conclusory statements at the summary judgment stage. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). Instead, "the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park-Forest-Chicago Heights, Ill. Sch.*

*Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original).

The Local Rules provide parties with specific details as to how litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Greer v. Board of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Specifically, the party opposing a motion for summary judgment must file "a concise response to the movant's statement" that includes:

> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting material relied upon.

*See* Local Rule 56.1(b)(3). If the non-movant fails to properly contest the moving party's facts, the Court deems the movant's facts as admitted. *See* Rule 56.1(b)(3); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Although Gammage has styled her Memorandum to the Court as "Plaintiff's Rule 56.1(b)(1) Materials in Opposition to Defendant's Motion for Summary Judgment and Rule 56.1(a)(3) Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment," Gammage has not followed Local Rule 56.1. She has not admitted or denied the

2

Reserve Bank's factual statements as required. Furthermore, Gammage has not designated any material facts that include references to affidavits, parts of the record, or other supporting material. Because Gammage failed to properly contest the Reserve Bank's facts pursuant to the Local Rules, the Reserve Bank's facts are admitted for purposes of this summary judgment motion. *See Smith*, 321 F.3d at 683.

## II. UNDISPUTED FACTS

### A. The Federal Reserve Bank

The Federal Reserve Bank, which is the United States' central bank, consists of Defendant Federal Reserve Bank of Chicago and eleven other Reserve Banks. (R. 21-1, Def.'s Rule 56.1 Statement of Undisputed Material Facts, ¶ 1.) The Reserve Banks are responsible for formulating the United States' monetary policy, supervising and regulating banks and bank holding companies, and providing financial services to banks and the United States government. (*Id.*) At all relevant times, the Chicago Office of the Reserve Bank employed between approximately 1,450 to 1,800 individuals. (*Id.* at ¶ 3.)

### B. Plaintiff's Work History

The Reserve Bank hired Gammage, who is African American, as a grade 3 mail carrier on July 15, 1968. (*Id.* at ¶ 4.) In 1971, the Reserve Bank promoted Gammage to a grade 5 outside messenger, and in June 1974 the Bank promoted to her a grade 6 release clerk in the safekeeping securities area. (*Id.* at ¶¶ 5,6.) In October 1978, the Reserve Bank promoted Gammage to a grade 7 junior securities teller, and in March 1981 the Bank promoted her to grade 8 securities teller. (*Id.* at ¶¶ 7,8.) Because the Reserve Bank's grading system changed in 1982, Gammage became a securities teller B, grade 39 or 40. (*Id.* at ¶ 9.) In May 1984, Gammage transferred to a

grade 40 control clerk position in the treasury, tax, and loan department. (*Id.* at ¶ 10.) In 1994, Gammage transferred to the safekeeping custody department to fill a vacancy. (*Id.* at ¶ 11.) The Reserve Bank's grading system once again changed in January 1995, at which time Gammage became a grade 7 control clerk. (*Id.* at ¶ 12.)

In August or September 1995, Gammage transferred between two departments to fill in for absent employees when needed. (*Id.* at ¶ 13.) In September 1995, Gammage applied for and received the position of grade 6 senior clerk III in the economic research department. (*Id.* at ¶ 14.) Although Gammage knew that the senior clerk III job was a lower grade than her previous assignment, she applied for the position because she did not like being transferred between two departments. (*Id.* at ¶ 15.) Also, the Federal Reserve was phasing out the jobs in her former department and transferring them to the Reserve Bank in St. Louis, Missouri. (*Id.*) Gammage remained in her non-exempt grade 6 senior clerk III position until September 2002. (*Id.* at ¶ 19.)

### C.  Performance Evaluations

As a senior clerk III, one of Gammage's responsibilities was to record and maintain accurate attendance records of the economic research department's employees. (*Id.* at ¶ 43.) In January of 2000, Gammage's direct supervisor, Nancy Wellman (Caucasian) gave Gammage a performance evaluation for the year 1999 with a rating of "needs improvement" for her responsibility of "timekeeping – communication, customer – stakeholder focus." (*Id.* at ¶ 47.) Gammage's overall performance rating was "needs improvement." (*Id.*) In January 2001, Wellman gave Gammage her annual performance evaluation for the year 2000 with a rating of "needs improvement" for the timekeeping category. (*Id.* at ¶ 51.) Again, Gammage's overall performance rating was "needs improvement." (*Id.*) In February of 2002, Wellman gave

Gammage her performance evaluation for the year 2001. (*Id.* at ¶ 55.) Wellman gave Gammage a rating of "did not meet goals" for the timekeeping category and an overall rating of "needs improvement." (*Id.*)

**D.    Discrimination Complaint**

At some point in 2000 or early 2001, Gammage complained to Vice President Jean Valerius (Caucasian) that she thought her supervisor, Wellman, was a racist. (*Id.* at ¶ 49.) Valerius told Gammage that she did not believe that there was a basis for Gammage's accusations, but if Gammage felt differently, she should report her complaint with the EEO Officer, Angela Robinson (African American). (*Id.* at ¶ 50.)

In early 2002, EEO Officer Robinson personably conducted a four to five month investigation of Gammage's various discrimination complaints against Wellman. (*Id.* at ¶ 58.) Robinson then informed Gammage that she had concluded her investigation and that she did not believe that there was any evidence to support Gammage's accusations that Wellman had treated her in a discriminatory fashion based on her race. (*Id.* at ¶ 59.)

**E.    Elimination of Gammage's Position**

In February of 2002 after Vice President Valerius retired, Loretta Ardaugh (Caucasian) assumed some of Valerius' job responsibilities, including oversight of the administrative support group. (*Id.* at ¶ 60.) In July of 2002, Ardaugh evaluated Gammage's job duties and consequently recommended that the Reserve Bank eliminate Gammage's position and distribute her remaining job duties among other employees in the research department. (*Id.* at ¶ 61.) Shortly thereafter, Senior Vice President, Curt Hunter (African American) approved Ardaugh's recommendation to eliminate Gammage's job position. (*Id.* at ¶ 62.) On August 15, 2002, Ardaugh told Gammage

that her position of senior research clerk III was being eliminated and that she was going to get a severance package offer. (*Id.* at ¶ 63.) On August 20, 2002, Vice President Richard Opalinski (Caucasian) sent Gammage a letter with a "Severance and General Release Agreement" along with other related documents. (*Id.* at ¶ 64.) The Reserve Bank offered Gammage separation pay of $33,384, plus the continuation of medical, dental, and other related benefits for one year if she agreed to sign the Severance and General Release Agreement. (*Id.* at ¶ 65.) In early September of 2002, Gammage met with Ardaugh and Opalinski and informed them that, based on the advise of her attorney, she would not sign the Severance and General Release Agreement. (*Id.* at ¶ 66.) Because her job was being eliminated, on or about September 12, 2002, Gammage asked Opalinski if she could transfer to the check department. (*Id.* at ¶ 37.) Gammage, however, never completed an application for the check processor position nor did she have the minimum requirement of one year of check processing experience required for this position. (*Id.* at ¶¶ 36, 38.) Gammage's last day with the Reserve Bank was September 13, 2002. (*Id.* at ¶ 67.)

### F. EEOC Charge

On October 24, 2002, Gammage filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she had complained to the Reserve Bank's EEO Officer of racial discrimination beginning in February of 2002, and that the Reserve Bank informed her on August 15, 2002, that her job was being eliminated. (*Id.* at ¶ 68.) Gammage thus contended that she had been discriminated against based on her race and that the Reserve Bank retaliated against her for filing a complaint with its EEO Officer. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Even where all of the material facts are undisputed, as in this case, the Court must still determine whether judgment is proper as a matter of law. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

## III. STATUTE OF LIMITATIONS

### A. Title VII

Under Title VII, an Illinois plaintiff must file an employment discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In general, federal courts only consider evidence from this 300-day period when making Title VII determinations, however, because the statute of limitations is not jurisdictional it is subject to equitable considerations. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Here, Gammage contends that because her claims fall under the equitable doctrine of a continuing violation, the Court may look to evidence outside of the 300-day period. *See id.; see also National R.R. Passenger*, 536 U.S. at 113-15.

Under the continuing violation doctrine, a plaintiff may establish a continuing violation of Title VII under one of the following theories: (1) the employer made employment decisions over a period of time making it difficult for the employee to determine the actual date of

7

discrimination; (2) the employer relied on an express policy of discrimination; or (3) the discrete acts of discrimination were part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period. *See Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002).

Gammage fails to advance any of these theories in support of the continuing violation doctrine and the Court will not construct her legal arguments for her, especially because she is represented by counsel. *See Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996). Accordingly, because Gammage filed her EEOC charge on October 24, 2002, her actionable Title VII claims are limited to the alleged discriminatory or retaliatory conduct occurring after December 28, 2001, that is, the 300 days prior to her EEOC charge. *See Dandy*, 388 F.3d at 270.

### B. 42 U.S.C. § 1981

Under Section 1981, a plaintiff must bring a claim within four years of the alleged discrimination. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 1845 (2004); *Dandy*, 388 F.3d at 268-69. Because Gammage filed her Complaint on December 23, 2003, her actionable Section 1981 claims are limited to the alleged discriminatory or retaliatory conduct occurring after December 23, 1999, which is four years prior to the filing of her Complaint. *See Dandy*, 388 F.3d at 269. The Court therefore will not consider Gammage's time-barred constructive demotion and hostile work environment arguments based on earlier incidences.[1]

---

[1] Gammage did not make these allegations in her EEOC charge or in her Complaint. Under Title VII, federal courts only review charges that are included in the EEOC charge or charges reasonably related to the EEOC allegations. *See Dandy v. United Parcel Serv.*, 388 F.3d 263, 270 (7th Cir. 2004). Therefore, the Court will not consider Gammage's constructive demotion and hostile work environments arguments on this separate basis.

## IV. ANALYSIS

### A. Count I – Failure to Promote and Disparate Treatment Claims[2]

Gammage brings two cognizable claims in Count I of her Complaint that are not duplicative of Counts II and III. First, she alleges that the Reserve Bank discriminated against her based on her race for failing to promote her on sixteen different occasions. Second, Gammage alleges that the Reserve Bank terminated her based on her race.

#### 1. Failure to Promote Claim

Fifteen of the sixteen instances that Gammage asserts support her failure to promote claim occurred before December 23, 1999. Those claims, however, are time-barred. *See Dandy*, 388 F.3d at 269. The Court thus turns to Gammage's remaining claim that the Reserve Bank denied her a grade 5 check processor position in the check department because of her race.

To establish a prima facie case of discrimination based on the failure to promote, Gammage must establish that: (1) she is a member of a protected class; (2) she applied for and had the requisite qualifications for the promotion; (3) her employer denied her the promotion; and (4) her employer promoted a non-protected member who was not more qualified than she. *Id.* at 273; *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

Because the Reserve Bank concedes that Gammage is a member of a protected class, the Court examines whether Gammage applied for and was qualified for the check processing position, whether the Reserve Bank denied her the promotion, and whether the Reserve Bank promoted someone who was less qualified than Gammage. *See Grayson*, 317 F.3d at 748. First,

---

[2] Because Title VII and 42 U.S.C. § 1981 have the same liability standards, the Court need not address Gammage's claims under each statute. *See EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 658 (7th Cir. 2003).

9

Gammage did not apply for the check processor position nor did she have the one year of check processing experience required. Second, the Reserve Bank did not deny her the position because she did not apply for it in the first instance. Last, Gammage fails to identify who the Reserve Bank promoted to the grade 5 check processor position, let alone establish that a non African American with less qualifications was promoted instead of her. Because Gammage has failed to establish her failure to promote claim, judgment as a matter of law is appropriate as to this claim.

### 2. Race Discrimination Claim

A plaintiff alleging race discrimination may proceed along one of two routes in proving her case -- the direct method of proof or the indirect, burden-shifting method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Gammage has not come forward with any direct proof of race discrimination, the Court turns to the *McDonnell Douglas* burden-shifting method to determine whether the Reserve Bank intentionally discriminated against Gammage based on her race. To establish a prima facie case of race discrimination, Gammage must show that (1) she is a member of a protected class, (2) she was meeting the Reserve Bank's legitimate expectations, (3) she suffered an adverse employment action, and (4) the Reserve Bank treated similarly-situated employees outside her protected class more favorably than she. *See id.*; *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004).

The Reserve Bank concedes that Gammage is a member of a protected class and that she suffered an adverse employment action. Therefore, the Court must determine whether Gammage performed her job satisfactorily and that other non-exempt grade 6 senior clerks who were not African American were treated more favorably than she was under the circumstances.

First, there is evidence in the record that Gammage did not reasonably perform her job to the Reserve Bank's legitimate expectations. The Reserve Bank has provided the Court with Gammage's annual performance evaluations starting in the year 2000. In her 2000 and 2001 evaluations, Gammage's overall performance and timekeeping responsibility ratings were "needs improvement." Gammage's last performance rating prior to her termination was "did not meet goals" for her timekeeping responsibility and her overall rating was "needs improvement."

Gammage argues that these negative performance evaluations are irrelevant because the Reserve Bank only offers evidence of three recent negative evaluations over her 34 year career. The relevant performance evaluations, however, are those given near or at the time of the adverse employment action, not prior evaluations over an entire career. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). In any event, even if Gammage had provided the Court with earlier positive performance evaluations, these evaluations, standing alone, cannot create a genuine issue of triable fact when there have been changes in the employee's responsibilities and supervisors, as is the case here. *See Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

Next, Gammage has failed to provide any evidence that the Reserve Bank treated similarly situated non African American employees more favorably than Gammage under the circumstances. Gammage has not provided evidence that a non African American employee held the same or similar job that she had, was subjected to the same standards, was supervised by the same person, and had comparable qualifications, yet the Reserve Bank did not terminate that employee. *See Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Because Gammage has not established a prima face case of race discrimination, judgment as a matter of

11

law is appropriate.

### B. Count II – Pattern and Practice

In Count II of her Complaint, Gammage contends that the Reserve Bank engaged in a pattern and practice of discriminating against African American employees. To state a prima facie case for a pattern and practice discrimination claim, a plaintiff must point to more than isolated incidents of discrimination. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875-76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). Instead, a plaintiff must establish "that racial discrimination was the company's standard operating procedure – the regular rather than the unusual practice." *Id.* at 876 (citation omitted). A plaintiff can meet this burden by establishing that gross statistical disparities exist between similarly situated employees of different races. *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977). Courts also examine anecdotal evidence in determining whether a pattern and practice discrimination claim exists. *See Guerrero v. Ashcroft*, 253 F.3d 309, 315 (7th Cir. 2001).

Gammage provides the Court with parts of the 1993 Staff Report of the House of Representatives' Committee on Banking, Finance, and Urban Affairs as statistical support for her claim. As previously discussed, Gammage did not submit this 1993 report in her statement of facts pursuant to Local Rule 56.1. Nevertheless, the report provides only general statistical information for the years 1991 and 1992, and thus is insufficient to support Gammage's pattern and practice claim. Specifically, the report gives information on the categories of women, minority women, minority men, and total men in the areas of officers, and grades 14-16, grades 10-13, and grades 1-9, but does not provide specific statistics pertaining to African American

12

employees. As the Supreme Court in *Hazelwood* emphasized, courts must consider the proper community or group when making statistical comparisons in pattern and practice cases. *See Hazelwood Sch. Dist.*, 433 U.S. at 310-12. Simply put, because the report does give statistics concerning the hiring or promoting of African Americans, the Court cannot make statistical comparisons between African Americans and other applicants and employees. *See id.* Accordingly, the report's statistical information is insufficient to support Gammage's pattern and practice claim.

The Court next examines the anecdotal evidence concerning the Reserve Bank's alleged pattern and practice of discriminating against African Americans. Here, the anecdotal evidence in the record concerns Gammage alone. Anecdotal evidence relating to one employee in one department of the Reserve Bank is insufficient to establish a pattern and practice claim, especially because the Reserve Bank in Chicago employed over 1,400 employees during the relevant time period. *See, e.g., Guerrero*, 253 F.3d at 315 (anecdotal evidence of two other FBI agents along with disputed statistics not enough information to assess trend). Thus, Gammage's pattern and practice claim fails and the Court grants the Reserve Bank's motion for summary judgment on Count II.

### C. Count III – Retaliation Claim

Finally, Gammage claims that the Reserve Bank retaliated against her for filing a discrimination complaint with the Reserve Bank's EEO Officer. A plaintiff may pursue a retaliation claim through either the direct or indirect methods of establishing discriminatory intent. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the first method, the plaintiff must present direct evidence of a statutorily protected activity, an

13

adverse employment action, and a causal connection between the two. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Because Gammage has failed to provide any direct evidence of retaliation, the Court turns to the indirect method of establishing discriminatory intent.

An employee may establish a prima facie case of retaliation under the indirect method by showing that (1) she engaged in a protected activity, (2) she was performing her job according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Under the indirect method, a plaintiff's failure to satisfy any one of these prima facie elements is fatal to her retaliation claim. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).

Again, Gammage must establish that she was performing her job according to the Reserve Bank's legitimate expectations. As discussed in detail above, the record contains evidence, especially Gammage's performance ratings, that Gammage was not performing her job to the Reserve Bank's satisfaction. Furthermore, Gammage has not come forward with any evidence that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, that is, comparable employees who did not file discrimination complaints with the Reserve Bank's EEO Officer. *See Ajayi*, 336 F.3d at 532. As such, Gammage has failed to establish a prima facie case of retaliation. Therefore, the Court grants the Reserve Bank's motion for summary judgment as to Count III of Gammage's Complaint.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Date: January 5, 2005

                **ENTERED**

                *[signature]*

                **AMY J. ST. EVE**
                **United States District Judge**